# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MONIQUE SINKFIELD,

       Plaintiff,

v.                                     Case No. 13-10418

STATE FARM INSURANCE, INC.,

       Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

After a fire at her residence, Monique Sinkfield (Sinkfield) brought a claim for damage to her home and personal property under her homeowner's insurance policy ("the Policy") issued by State Farm Insurance, Inc. ("State Farm") .  State Farm denied her insurance claim, and Sinkfield brought the instant action alleging breach of contract. The matter is fully briefed, and a hearing is not necessary.  *See* E.D. Mich. LR 7.1(f)(2). For the following reasons, the court will grant State Farm's motion for summary judgment.

## I.  BACKGROUND

As a threshold matter, the court notes that Sinkfield has not submitted a counter-statement of material facts.  Instead, Sinkfield states that she "incorporates by reference paragraphs 1–28 and paragraphs 31–32 of Defendant's motion as same."  (Pl.'s Br. at vi, Pg. ID# 474.)  In its March 6, 2013 scheduling order, the court directed:

> The response to a Rule 56 Motion must begin with a 'Counter-statement of
> Material Facts' if any of the moving party's proffered facts are contested. . . .
> Any proffered fact in the movant's Statement of Material Facts that is not

specifically contested will, for the purpose of the motion, be deemed admitted.

(Pg. ID# 60–61.)  In her "Statement of Material Facts," Sinkfield does not specifically contest any of State Farm's facts, and does not advance any facts of her own.  Thus, for the purposes of this motion, all of State Farm's proffered facts are deemed admitted.

Approximately eighteen months before her home fire, Sinkfield submitted a petition for protection under Chapter 7 of the U.S. Bankruptcy Code, 11 U.S.C. § 727. (Bankruptcy Petition, Pg. ID# 218–48.)  In Schedule B of her Petition, Sinkfield stated that she owned $4,000 in personal property, including a desktop computer valued at $500, clothing and shoes valued at $3,000, and jewelry valued at $500.  (Bankruptcy Petition, Pg. ID# 221; Bankruptcy Amendment, Pg. ID# 261.)  On March 16, 2011, the Bankruptcy Trustee submitted a "Report of Undisclosed Asset" which stated that Sinkfield did not disclose her ownership interest in her home at the time she filed for bankruptcy.  (Report of Undisclosed Asset, Pg. ID# 264.)  Sinkfield later clarified that her home was worth $27,000.  (Bankruptcy Amendment, Pg. ID# 260.)  She declared, under penalty of perjury, that both her Bankruptcy Petition and the Amendment were true and correct to the best of her knowledge.  (Bankruptcy Petition, Pg. ID# 248; Bankruptcy Amendment, Pg. ID# 258.)  On April 15, 2011, the bankruptcy court discharged Sinkfield's debts.  (Discharge of Debtor, Pg. ID# 330.)

On June 11, 2012, Sinkfield's home caught fire.  (Incident Report, Pg. ID# 157–59.)  Following the fire, Sinkfield claimed that she suffered $143,000 in damage to her house, and $170,000 in damage to her personal property.  (Pl.'s Resp. Interrog., Pg. ID# 333.)  After an investigation, on December 3, 2012, State Farm sent a letter to

2

Sinkfield denying any liability under the policy, stating that Sinkfield had committed fraud relating to the loss. (Denial Letter, Pg. ID# 411–12.)

Sinkfield provided State Farm with financial information as part of her claim under the Policy. According to her tax returns, Sinkfield earned $16,288 and $11,678 in 2010 and 2011, respectively. (Def.'s Fact App. D, Pg. ID# 212, 216.) Sinkfield was unemployed from September 2011 until May 2012, when she began working for the National Health Foundation earning $9 per hour, plus commission. (Sinkfield Dep., Pg. ID# 182.) This resulted in a monthly income of approximately $550 to $1000. (*Id.*) Sinkfield received a further $1,308 per month in unemployment benefits, $697 per month in Social Security benefits, and $557 per month in child support. (*Id.* at Pg. ID# 182–83.) Sinkfield also stated that she received approximately $1,000 per month for promoting a strip club from January to August 2012, as well as sporadic income from a "social club," including $3,500 for a party that she held in March 2012. (*Id.* at Pg. ID# 184.) The tax returns that she filed with the government did not declare this income. (*Id.*) Sinkfield also claims that she received property valued at approximately $6,659 in "gifts" during 2012. (Aff. Elisabeth McGhie, Pg. ID# 408–09.) Thus, including the value of the gifts and using the higher estimation of her monthly income from the National Health Foundation, Sinkfield took in approximately $33,031 in the first six months of 2012.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court

must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

The movant has the initial burden of showing the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citation omitted). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita v. Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Summary judgment, therefore, is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

## III.  DISCUSSION

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position[.]" *Davis v. Wakelee*, 156 U.S. 680, 689 (1895). This rule is known as judicial estoppel, and its purpose is to protect the integrity of the judicial process. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Several factors inform the decision whether to apply judicial estoppel:

> First, a party's later position must be 'clearly inconsistent' with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would 'create the perception that either the first or the second court was misled[.]' Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' and thus poses little threat to

4

judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 750–51 (internal citations omitted). The Sixth Circuit has described judicial estoppel "as a rule against playing fast and loose with the courts, blowing hot and cold as the occasion demands, or hav[ing] [one's] cake and eat[ing] it too." *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 424 (6th Cir. 2005). "Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion." *New Hampshire*, 532 U.S. at 750.

State Farm argues that judicial estoppel should apply to bar Sinkfield's claim. State Farm relies on a provision of the Policy that states: "This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss." (Homeowners Policy, Pg. ID# 172.) It argues that given Sinkfield's income in the first six months of 2012 of approximately $33,031 (at the high end of the amount she reported), and her total income in 2011 of $11,678, her assertion that she accumulated $166,000 in personal property in the fourteen months between when her debts were discharged by the bankruptcy court and her house fire occurred strains credulity. State Farm argues that Sinkfield substantially understated her assets in order to gain a bankruptcy discharge, was successful in convincing the bankruptcy court to accept her petition, and is now overstating her assets in order to fraudulently claim more money than she is due under the Policy.

Sinkfield advances no meaningful counter-argument. She cites cases stating that parties may avoid judicial estoppel if their prior position was the result of mistake,

inadvertence, or fraud, *see Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894 (6th Cir. 2004); *Konstantinidis v. Chen*, 626 F.2d 933 (D.C. Cir. 1980); *Johnson Serv. Co. v. TransAmerica Ins. Co.*, 485 F.2d 164 (5th Cir. 1973), but does not argue that she mistakenly or inadvertently omitted $166,000 in personal property from her bankruptcy petition or that she was fraudulently induced to do so.   And although she disputes State Farm's claim that her income was insufficient to allow her to accumulate $166,000 in personal property in fourteen months, she conceded State Farm's calculations in her statement of material facts, and has presented no competing exhibits advancing an alternative view of the facts or explaining how she accumulated her property.  Instead, she asserts that "Plaintiff can and will provide additional proofs [of her loss,]" and states that "Plaintiff will provide any requested sworn affidavit regarding contents of Plaintiff's residence at the time if requested by this Court."  (Pl.'s Response Br. at 5, Pg. ID# 479.) The time to present such proofs has passed.  A nonmoving party must advance enough evidence to show there exists "a genuine issue for trial" and "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to avoid summary judgment. *Matsushita*, 475 U.S. at 586–87.  Sinkfield has not met this burden and the court finds that judicial estoppel applies.

## IV.  CONCLUSION

The court concludes that a reasonable jury could not find in favor of Sinkfield given the vast inconsistency between the value of her assets stated in the bankruptcy petition and her present claim under the Policy.  Sinkfield has not advanced a competing version of the facts, and the court finds that judicial estoppel applies to bar her claim.  Accordingly,

6

IT IS ORDERED that summary judgment is granted in favor of State Farm.  A

separate judgment will issue.

                                              s/Robert H. Cleland                                        
                                             ROBERT H. CLELAND
                                             UNITED STATES DISTRICT JUDGE

Dated:  November 7, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, November 7, 2013, by electronic and/or ordinary mail.

                                              s/Lisa Wagner                                              
                                             Case Manager and Deputy Clerk
                                             (313) 234-5522